EDWARDS, Judge.
This is an appeal by Mrs. Corine Murphy Decker, the opponent of an olographic will, from a judgment ordering the will of Ivy Murphy Currie, a/k/a Iva Gae Currie, to probate.
Ivy Murphy Currie, the testatrix, died on July 12, 1971, survived by her parents, five brothers and sisters, and her husband, James L. Currie. On September 19, 1974, Corine Murphy Decker, the decedent’s sister and curator of their parents, filed a petition for possession seeking to be made adminis-tratrix of her sister’s succession. Thereafter, Mrs. Decker commenced an inventory of the succession.
On February 5,1976, James Currie filed a petition for probate of an olographic testament dated November 12, 1954, purportedly written, dated and signed by his deceased wife, Ivy Murphy Currie. Since an opposition to the probate of the testament had been previously filed by Mrs. Decker, a contradictory hearing was held to determine the authenticity of the testament. After hearing all the evidence, the trial court ordered the will admitted to probate.
Mrs. Decker contends that the will was not proved by the testimony of two credible witnesses as required by LSA-C.C.P. art. 2883; and that the will is a forgery.
The sole issue presented for review is whether or not there was sufficient proof presented to authenticate the will.
The applicable provisions of our law concerning the proof needed to authenticate an olographic testament are:
LSA-C.C. art. 1588:
“The olographic testament is that which is written by the testator himself.
“In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of State.”
LSA-C.C.P. art. 2883
“The olographic testament must be proved by the testimony of two credible witnesses that the testament was entirely written, dated, and signed in the testator’s handwriting. The court must satisfy itself, through interrogation or from the depositions of the witnesses, that the handwriting and signature are those of the testator, and must mention these facts in its procés verbal.”
LSA-C.C.P. art. 2903
“At the contradictory trial to probate a testament, its proponent bears the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of law.”
At the hearing, James Currie, the testatrix’s husband of almost nineteen years, testified that he was very familiar with his wife’s handwriting. He identified the handwriting on various postcards and on the back of certain photographs as that of his wife. He identified the signature on a cemetery deed as being his wife’s handwriting. He stated unequivocally that the will was entirely written, dated and signed in his wife’s handwriting.
Daniel Currie, a young man raised by the testatrix and Mr. Currie from infancy, corroborated the identification of the handwriting on the postcards and photographs as that of his “mother” Ivy Murphy Currie.
Additionally, Bobby G. Foley, the manager and document examiner at the North Delta Crime Laboratory, was qualified, without objection, as an expert in the field of questioned documents and testified on behalf of the proponent of the will. Foley stated that he had made a detailed study of the decedent’s handwriting by comparing known specimens of her handwriting on the postcards, photographs and the cemetery deed, all admitted into evidence, with the handwriting in the will. He testified at *706 length concerning the similarities and innate variations in the formation of individual letters on the postcards, photographs and cemetery deed when compared with the same letters in the will. He produced a photographic enlargement of handwriting exemplars taken from the known specimens of the decedent’s writing and from the will. Based on his extensive investigation, Mr. Foley concluded that the person who wrote the postcard, wrote on the back of the photographs and signed the cemetery deed was the same person who wrote, dated and signed the olographic will, i. e., Ivy Murphy Currie.
However, Mrs. Decker contends, citing Succession of White, 132 La. 890, 61 So. 860 (1913), that a handwriting expert’s testimony does not satisfy the requirements of LSA-C.C.P. art. 2883, supra.
However, the Supreme Court in Succession of White also stated on page 865:
“Article 325 of the Code of Practice, reads as follows:
‘If the defendant deny his signature in his answer, or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature, either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name.
‘But the proof by witnesses shall not exclude the proof by experts or by a comparison of writing, as established by the Civil Code.’
“The Civil Code, however, does not provide for proof by experts or by comparison. But it has become the practice to admit such proofs in all cases in which issues of forgery vel non of written instruments are raised.”
The Court in White then proceeded to evaluate the conflicting testimony of two expert witnesses.
Though the dictum in Succession of White indicates the general uncertainty surrounding the testimony of handwriting experts because of the inaccuracies in the science of chirography, we have not found, nor has opponent cited, any case refusing a handwriting expert’s testimony to prove a will.
Indeed the only proof required by the Code of Civil Procedure to probate an olographic will is the testimony of two credible witnesses that the will was entirely written, dated and signed in the decedent’s handwriting. This requirement was satisfied in the instant case by the testimony of James Currie and Bobby Foley.
Accordingly, opponent’s first contention is without merit.
On the issue of forgery, the only evidence offered to prove forgery was the testimony of the opponent, Mrs. Decker, and Emma Joiner, a woman raised by the testatrix. Both testified that they did not believe that the will was written by Ivy Murphy Currie.
Both based their conclusions on the asserted fact that the decedent’s penmanship was much worse than that contained in the will.
We find that the preponderance of the evidence in the record supports the trial court’s conclusion that the olographic will in question was entirely written, dated and signed by the testatrix.
For the reasons assigned, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.